UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ROGER REED, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff<br><br>*v.*<br><br>NATIONSTAR MORTGAGE LLC<br><br>Defendant | Case No. 1:14-cv-1701<br><br><br>**CLASS ACTION COMPLAINT**<br>**WITH JURY DEMAND** |

1.     Plaintiff brings this nationwide class action on behalf of himself and all others similarly situated against Defendant Nationstar Mortgage LLC ("Defendant" or "Nationstar") for injunctive relief and to recover statutory damages arising from Nationstar's repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## PARTIES

2.     Plaintiff Roger Reed is a citizen and resident of Illinois.

3.     According to Nationstar Mortgage Holdings Inc. ("Nationstar Inc.") Form 10-K for the year ended December 31, 2013, Defendant is a Delaware limited liability company which maintains its principal executive offices in Lewisville, Texas.  Defendant is the principal operating subsidiary of Nationstar Inc. and is a real estate services company engaged primarily in "the servicing of residential mortgage loans for others, the origination and selling or securitization of single-family conforming mortgage loans to GSE's or other third-party investors in the secondary market, and providing mortgage and default service offerings through Solutionstar," Nationstar Inc.'s ancillary service business. Defendant is one of the largest non-bank mortgage loan services in the United States.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's and Class members' claims arise under the TCPA.

5.      This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  Plaintiff, a citizen of Illinois, brings claims on behalf of a nationwide class against Defendant, a citizen of Delaware and Texas.  The amount in controversy exceeds $5,000,000.

6.      Venue is proper in the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2), because Defendant is subject to personal jurisdiction in this Judicial District, and, as set forth in LR.3.1, this action is related to another action entitled, *Sinley v. Nationstar Mortgage LLC*, N.D. Ohio Case No. 14-cv-00273, which was previously filed, and is presently pending, in this Court.

7.      This Court has personal jurisdiction over Defendant because, at all times relevant hereto, Defendant has maintained sufficient contacts with Ohio and engaged in continuous, permanent, and substantial business in Ohio, as evidenced by the fact that Defendant services mortgage loans in Ohio and maintains an "active" registration with the Ohio Secretary of State to do business in the State of Ohio as a foreign limited liability company.

## SUBSTANTIVE ALLEGATIONS

### The Telephone Consumer Protection Act

8.      The Telephone Consumer Protection Act (TCPA) was passed by the United States Congress in 1991 and is codified as 47 U.S.C. § 227. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and faxes.

9.     On October 16, 2013, the TCPA was amended to include a requirement that businesses obtain "express consent" from cellular and residential telephone customers before making certain types of telephone calls.

10.     Specifically, with respect to calls made to cellular telephones, the TCPA prohibits the use of any automated telephone dialing system or any artificial or prerecorded voice unless the recipient expressly consents to the receipt of such calls on his/her cellular telephone.

11.     With respect to calls made to residential telephones, the TCPA prohibits the use of any artificial or prerecorded voice to deliver a message unless the recipient expressly consents to the receipt of such calls on his/her residential telephone.

12.     According to the Federal Communications Commission, to be considered "*express consent*," such consent must: (i) be in writing; (ii) be signed by the person providing the consent; (iii) specify the telephone number to which the person is consenting to be called; and (iv) clearly authorize the company to use an automated dialing system or prerecorded voice.  *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC Report and Order, CG Docket No. 02-278 (Feb. 15, 2012) ¶ 33, Appendix A, at 34.

**Nationstar Has Repeatedly, Knowingly, and Wilfully Violated the TCPA by Placing Calls to Both Plaintiff's Cellular and Residential Telephones Using an Automated Telephone Dialing System Without Obtaining Plaintiff's Express Consent to Do So**

13.     Nationstar has repeatedly, knowingly and willfully violated the TCPA by placing calls to Plaintiff's cellular telephone using an automated telephone dialing system without obtaining Plaintiff's express consent to do so.  In addition, Nationstar has repeatedly, knowingly and willfully violated the TCPA by placing calls to Plaintiff's residential telephone using an artificial or prerecorded voice to deliver a message without obtaining Plaintiff's express consent to do so.

14.     Nationstar blatantly admits that it has been using predictive dialing technology, i.e., an automated telephone dialing system, to contact borrowers, such as Plaintiff, from at least as early as 2012.  In Defendant's Form S-1 dated February 24, 2012, Defendant states "[i]n the account resolution group, we use a combination of *predictive dialer technology* and account level assignments to contact the borrowers."  Form S-1 dated February 24, 2012 at 125 (emphasis added).

15.     Nationstar's particular automated telephone dialing system is known as the "Avaya Proactive Contact" system.  According to Avaya Inc., the "Avaya Proactive Contact" system is a "predictive dialing system" that uses "the most advanced dialing algorithms available to optimize your outbound communication campaigns."  In particular, the "Avaya Proactive Contact" system enables Nationstar to "set up campaigns and manage multiple dialers across [its]'s organization… [To] define and manage various outbound campaigns for marketing, sales and accounts payable all from a single system."

16.     According to Avaya Inc., the "Avaya Proactive Contact" system is built with several features that enable Nationstar to "comply with even the most restrictive regulations." Despite having this capability, however, Nationstar does not utilize the compliance functionality of its "Avaya Proactive Contact" system to ensure that the company is "adhering to strict regulatory compliance."  Instead, Nationstar routinely violates the TCPA by using its "Avaya Proactive Contact" system to call the cellular phones of Plaintiff and other class members without having obtained their express consent to do so.

17.     Nationstar utilized its "Avaya Proactive Contact" automated telephone dialing system to call Plaintiff's cellular telephone without having obtained Plaintiff's express consent to do so on at least the following dates:

a.  February 28, 2014 – Nationstar placed the first of three calls made to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system on this date;

b.  February 28, 2014 – Nationstar placed the second of three calls made to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system on this date;

c.  February 28, 2014 – Nationstar placed the third of three calls made to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system on this date;

18.  On March 7, 2014, Plaintiff accessed his account information online by logging onto www.nationstarmtg.com and providing his security credentials which validate him as an authorized user.  On doing so, Plaintiff viewed a screen labeled "Contact Update" that he had never seen when he had previously accessed his account information online.  On viewing this screen, Plaintiff noticed that both his cellular and home phone numbers had been pre-populated in the boxes that appeared on this web page.  Plaintiff also noticed that there was another box next to his cellular telephone number which contained "check mark" in the box, which Plaintiff understood meant that Nationstar would use Plaintiff's cellular telephone as a primary means of contacting Plaintiff.

19.  Because Plaintiff had never consented or otherwise authorized Nationstar to contact Plaintiff by calling either his cellular telephone or residential telephone, Plaintiff was very disturbed on viewing this "Contact Update" screen.  Similarly, Plaintiff never authorized Nationstar to populate this web page, or any other part of its website, with either Plaintiff's cellular or residential telephone numbers.  Accordingly, Plaintiff removed both his cellular and residential telephone numbers from the "Contact Update" screen and also removed the "check mark" that appeared in the box next to Plaintiff's cellular telephone number and "saved" the

updated page to ensure that Nationstar was informed that Plaintiff had not, and would not, consent to being telephoned by Nationstar on either his cellular or residential telephones.

20.     Despite Plaintiff having acted affirmatively to update his "Contact" information on Nationstar's system, Nationstar intentionally ignored the fact that Plaintiff had removed *both* his cellular and residential telephone numbers from Nationstar's system in order to make clear to Nationstar that Plaintiff had not, and would not, consent to being telephoned by Nationstar on either his cellular or residential telephones.

21.     Nationstar next violated the TCPA when it ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and placed another call to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system on March 18, 2014.  Within minutes, Nationstar violated the TCPA once again by using a prerecorded voice to call Plaintiff on his residential phone despite the fact that Plaintiff had *expressly* informed Nationstar that he *did not consent* to being called by Nationstar on either his cellular or residential telephones just 11 days earlier.

22.     On March 20, 2014, Nationstar once again violated the TCPA when it again ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed another call by using a prerecorded voice to call Plaintiff on his residential phone.  Minutes later, on that same day, Nationstar further violated the TCPA by placing another call to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system.

23.     On April 9, 2014, Nationstar violated the TCPA when it again ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone

numbers and nevertheless placed another call to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system.

24.     On April 10, 2014, Nationstar violated the TCPA when it again ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed another call to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system.

25.     On April 11, 2014, Nationstar violated the TCPA when it again ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed another call to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system.

26.     On April 12, 2014, Nationstar violated the TCPA when it again ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed another call to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system.

27.     On April 14, 2014, Nationstar violated the TCPA when it again ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed the first of two calls placed that day to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system.

28.     On April 14, 2014, Nationstar violated the TCPA when it again ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed the second of two calls placed that day to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system on the evening of April 14, 2014.

29.     On April 14, 2014, Nationstar violated the TCPA when it again ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed the first of two calls placed to Plaintiff's residential phone that day by using a prerecorded voice to call Plaintiff on his residential phone.

30.     On the evening of April 14, 2014, Nationstar violated the TCPA when it again ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed the second of two calls placed to Plaintiff's residential phone that day by using a prerecorded voice to call Plaintiff on his residential phone on April 14, 2014.

31.     Demonstrating the flagrant manner in which Nationstar repeatedly and intentionally violated the TCPA, Nationstar placed a total of 8 calls to Plaintiff's cellular and residential telephones in the 5 day period beginning April 9 and ending April 14, 2014, despite Plaintiff having expressly informed Nationstar that Plaintiff *did not consent* to being called by Nationstar on either his cellular or residential telephones.

32.     On April 30, 2014, Plaintiff wrote to Nationstar to, once again, expressly inform Defendant that Plaintiff *did not consent* to being called by Nationstar on either his cellular or residential telephones.  Plaintiff's April 30, 2014 letter to Nationstar stated in relevant part, "*Do not call my home or cell again!  Like the other times I have written saying the same thing.  DO NOT CALL ME.  Roger Reed*."  (Emphasis added).

33.     Despite Plaintiff having, again, expressly informed Nationstar that Plaintiff *did not consent* to being called by Nationstar on either his cellular or residential telephones on April 30, 2014, Nationstar once again violated the TCPA on May 16, 2014 when it placed

another call to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system late in the afternoon on May 16, 2014.

34.     On May 17, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed another call to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system in the early afternoon of Saturday, May 17, 2014.

35.     Minutes later, Nationstar violated the TCPA again when it placed another call to Plaintiff's residential phone in the early afternoon of Saturday, May 17, 2014 by using a prerecorded voice to call Plaintiff on his residential phone.

36.     On May 20, 2014, Nationstar again violated the TCPA when it placed two more calls to Plaintiff's residential phone on Tuesday, May 20, 2014, by using a prerecorded voice to call Plaintiff on his residential phone.

37.     On Monday, May 26, 2014, which was the Memorial Day holiday, Nationstar again violated the TCPA when it again called Plaintiff's residential phone shortly before 5 p.m. by using a prerecorded voice to call Plaintiff on his residential phone.

38.     On May 30, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed the first of two calls placed that day to Plaintiff's cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system.

39.     On May 30, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed the second of two calls placed that day to Plaintiff's

cellular telephone using its "Avaya Proactive Contact" automated telephone dialing system in the early afternoon of May 30, 2014.

40.     On May 30, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed the first of two calls placed to Plaintiff's residential phone that day by using a prerecorded voice to call Plaintiff on his residential phone.

41.     In the early afternoon of May 30, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed the second of two calls placed to Plaintiff's residential phone that day by using a prerecorded voice to call Plaintiff on his residential phone.

42.     On June 18, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed another call to Plaintiff's residential phone late in the afternoon on that day by using a prerecorded voice to call Plaintiff on his residential phone.

43.     On June 21, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed another call to Plaintiff's residential phone late just after noon time that day by using a prerecorded voice to call Plaintiff on his residential phone.

44.     On June 27, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed the first of three calls placed to Plaintiff's residential phone that day by using a prerecorded voice to call Plaintiff on his residential phone.

45.     On June 27, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed the second of three calls placed to Plaintiff's residential phone that day by using a prerecorded voice to call Plaintiff on his residential phone.

46.     On June 27, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless placed the third of three calls placed to Plaintiff's residential phone that day just after 5 p.m. by using a prerecorded voice to call Plaintiff on his residential phone.

47.     On *Sunday morning at 8:43 am*, June 27, 2014, Nationstar violated the TCPA when it again ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and Nationstar nevertheless placed another call to Plaintiff's residential phone by using a prerecorded voice to call Plaintiff on his residential phone.

48.     On June 30, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless called Plaintiff's residential phone just before 7:00 p.m. by using a prerecorded voice to call Plaintiff on his residential phone.

49.     On July 18, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless called Plaintiff's residential phone just before 4:00 p.m. by using a prerecorded voice to call Plaintiff on his residential phone.

50. On July 27, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless called Plaintiff's residential phone at approximately 3:47 p.m. by using a prerecorded voice to call Plaintiff on his residential phone.

51. On July 29, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless called Plaintiff's residential phone at approximately 3:30 p.m. by using a prerecorded voice to call Plaintiff on his residential phone.

52. On July 30, 2014, Nationstar violated the TCPA when it, again, ignored Plaintiff's instructions that he not be called by Nationstar on either his cellular or residential telephone numbers and nevertheless called Plaintiff's residential phone at approximately 4:35 p.m. by using a prerecorded voice to call Plaintiff on his residential phone.

53. None of these calls were made by Defendant "for emergency purposes," as described in 47 U.S.C. § 227(b)(l)(A).

54. In making these calls to Plaintiff's cellular and residential phones without Plaintiff's express consent to do so, Defendant repeatedly and knowingly and/or willfully violated the TCPA.

55. Evidence of the fact that Nationstar repeatedly violated the TCPA by: (i) utilizing its "Avaya Proactive Contact" automated telephone dialing system to call Plaintiff's cellular telephone; and (ii) using a prerecorded voice to deliver a message to Plaintiff without having obtained Plaintiff's express consent to do so is maintained by Defendant in the automated "Collection History Profile" which Nationstar maintains for Plaintiff's account, as well as the

accounts of all other Class members.  Among other things, the "Collection History Profile" maintained for Plaintiff's and each Class members' accounts specifies:

      a.     the "Loan number" and address of the mortgaged property used to collateralize such loan;

      b.     the exact date and time of each and every contact made by Nationstar with the Plaintiff or Class member;

      c.     the form of the contact, i.e., whether the contact was a phone call made to the Plaintiff's or Class members' cellular telephone, residence, business or by letter or other writing; and

      d.     whether each individual call was made by Nationstar's "Avaya Proactive Contact" automated telephone dialing system or a live human being.  The specific calls that were made by Nationstar's "Avaya Proactive Contact" automated telephone dialing system are each identified in the "Collection History Profiles" by Nationstar entering the phrase "**AVAYA**," "**PRE RECORDED DIALER MESSAGE**," "**PRDM**," "**CALL ANSWERED NO POSITIVE VOICE ID DETECTED**," or "**CALL DROPPED FROM DIALER HOLD, NO AGENT AVAIL**" in the "Collection History Profile."

**Nationstar Has Repeatedly, Knowingly, and Willfully Violated the TCPA by Calling Class Members' Cellular and Residential Phones Without Obtaining Their Express Consent**

56.     Class members have voiced their outrage over Defendant's repeated violations of the TCPA.  A sampling of such complaints that mirror Plaintiff's allegations is provided below:

      a.     "I mailed a pmt. to Nationstar immediately, but I have been getting daily robo calls harassing me. I have never been late on any payments in more than 40 years";

      b.     "Since my loan was sold to Nationstar, I received daily (or more) Robo Calls to my cell. As with others, no response when I answered. Tried customer service

but gave up after a long wait. Sent email from their website, no response. Finally logged FCC & BBB complaints";

c.    "I am getting daily robo calls on my cell phone since my mortgage was sold to them. I tried calling their customer service, but can't find a way to speak to anyone! Will never voluntarily do business with this company. I logged a complaint with BBB.";

d.    "NationStar Mortgage Company..They robo call multiple times day and night. It doesn't matter that you make your monthly mortgage payments.";

e.    "NationStar will ROBO CALL customers on the 4th or 5th of every month, even with customers that have never been late!!! This is a very UNPROFESSIONAL company… Having never missed a payment since they purchased my loan from Bank of America, they execute ROBO CALLING starting on the 4th of every month makes them a very sub par company. I CAN NOT wait for my Re-finance process to complete (with a different lender of course) so I can move onto a different servicer. They ARE THE WORST.";

f.    "This company is horrible. They recently assumed my mortgage from a real bank. The mortgage has never been late, not even a day. It has come out electronically for years on the same day, right on time, never bouncing, never rejected, etc. Yet Nationstar subjected me to a barrage of personal and electronic robo calls."

57.    Complaints regarding Defendant's conduct have not been limited to Internet postings.  In fact, Defendant has been sued multiple times in various jurisdictions in individual actions for violating the TCPA by routinely placing calls with an automated telephone dialing system or prerecorded voice to Class members' phones without express consent to do so.

58.     The fact that Defendant has been sued numerous times in individual actions based on the fact that Defendant has routinely placed calls with an automated telephone dialing system or prerecorded voice to cellular and residential phones without express consent to do so very clearly demonstrates that Defendant's continued violation of the TCPA is knowing and willful.

## CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action against Defendant pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of a class that is comprised of the following two sub-classes:

a.      Any person who received from Defendant a telephone call made using any automated telephone dialing system or any artificial or prerecorded voice on his/her cellular phone between October 16, 2013 and the present (the "Cellular Phone Subclass"). Excluded from the Cellular Phone Subclass are all those who provided Defendant with express written consent any time after October 16, 2013 to receive telephone calls made by Defendant using any automated telephone dialing system or any artificial or prerecorded voice on his/her cellular phone;

b.      Any person who received from Defendant a telephone call made using any artificial or prerecorded voice to deliver a message on his/her residential phone between October 16, 2013 and the present (the "Residential Phone Subclass").  Excluded from the Residential Phone Subclass are all those who provided Defendant with express written consent any time after October 16, 2013 to receive telephone calls made by Defendant using any artificial or prerecorded voice to deliver a message on his/her residential phone.

60.     Excluded from the class are counsel, the judge and judicial staff assigned to this case, and any immediate family members.

61.     The claims of the Class satisfy the requirements set forth in Fed. R. Civ. Proc. 23.

62.     Members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff estimates that there are thousands of members of the Class.

63.     Questions of law and fact are common to the Class and predominate over any questions affecting only individual members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of the litigation:

a.      Whether Defendant placed non-emergency calls to Plaintiff's and Class members' cellular phones using an automated telephone dialing system;

b.      Whether Defendant placed non-emergency calls to Plaintiff's and Class members' residential phones using a prerecorded voice;

c.      Whether Defendant's conduct was knowing and/or willful;

d.      Whether Defendant is liable for damages, and the amount of such damages; and

e.      Whether Defendant should be enjoined from engaging in such conduct in the future.

64.     Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all members of the Class received non-emergency phone calls that were placed to his cellular and residential phones by either Nationstar's automated telephone dialing system or prerecorded voice, his prior express written consent. Furthermore, Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

65.     Plaintiff will protect the interests of the Class fairly and adequately, and Plaintiff has retained attorneys experienced in complex class action litigation.

66.     Defendant's actions are based on grounds generally applicable to all Class members and, given the fact that Defendant has acted, and continues to act, uniformly with respect to all Class members, injunctive relief is appropriate for the Class as a whole.

67.     A class action is superior to all other available methods for this controversy because (i) the prosecution of separate actions by the Class members would create a risk of adjudications with respect to individual Class members that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; (ii) the prosecution of separate actions by Class members would create a risk of inconsistent or varying adjudications with respect to the individual Class members, which would establish incompatible standards of conduct for Defendant; (iii) Defendant acted or refused to act on grounds generally applicable to the Class; and (iv) questions of law and fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

68.     Plaintiff does not anticipate any difficulty in the management of this litigation.

## COUNT I

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
47 U.S.C. § 227 *et seq.*
(On Behalf of Plaintiff and the Class for Treble Damages)**

69.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

70.     Plaintiff and Defendant are "persons" under 47 U.S.C. § 153(39).

71.     The foregoing acts of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

72.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and members of the Class are entitled to treble damages of $1,500 for each and every call that violated the statute pursuant to 47 U.S.C. § 227(b)(3)(C).

## COUNT II

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227 *et seq.***
**(On Behalf of Plaintiff and the Class for Damages)**

73.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

74.     Plaintiff and Defendant are "persons" under 47 U.S.C. § 153(39).

75.     The foregoing acts of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

76.     As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.* Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

## COUNT III

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227 *et seq.***
**(On Behalf of Plaintiff and the Class for Injunctive Relief)**

77.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

78.     Plaintiff and Defendant are "persons" under 47 U.S.C. § 153(39).

79.     The foregoing acts of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

80.     As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.* Plaintiff and Class members are entitled to injunctive relief prohibiting Defendant's violation of the TCPA in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.     Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as the Class representative, and appoint the undersigned as Class counsel;

B.     Issue a permanent injunction prohibiting violations of the TCPA by Defendant in the future;

C.     Order Defendant to pay Plaintiff and all other Class members, as a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), treble damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

D.     Alternatively, if Defendant's violation is found to be negligent, order Defendant to pay Plaintiff and all other Class members, as a result of Defendant's violations of 47 U.S.C. § 227(b)(1), $500 in statutory damages for each and every violation of the TCPA;

E.     Award attorneys' fees and costs to counsel for Plaintiff and the Class;

F.     Award pre- and post-judgment interest as appropriate; and

G.     Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues in this action so triable of right.

Respectfully submitted,

s/Jack Landskroner
Jack Landskroner (0059227)
Drew Legando (0084209)
**LANDSKRONER GRIECO MERRIMAN LLC**
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. jack@lgmlegal.com, drew@lgmlegal.com

Paul O. Paradis, Esq.
Gina M. Tufaro, Esq.
**PARADIS LAW GROUP, PLLC**
570 Seventh Avenue, 20th Floor
New York, NY 10018
T. (212) 986-4500
F. (212) 986-4501
E. PParadis@hhplawny.com,
   GTufaro@hhplawny.com

*Counsel for Plaintiff and Class*